**Helen C. BOYD, et al., Plaintiffs,**

v.

**R.A. BULALA, M.D., Defendant.**

**Civ. A. No. 83–0557–A–C.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Nov. 5, 1986.

William O. Snead, III, Fairfax, Va., Rosemarie Annunziata, Mclean, Va., J. Randolph Parker, Charlottesville, Va., for plaintiff.

Ronald D. Hodges, Roy W. Ferguson, Jr., Harrisonburg, Va., for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

Plaintiffs Helen and Roger Boyd filed this medical malpractice suit on behalf of themselves and their infant daughter, Veronica Lynn Boyd, who suffered a perinatal injury which left her with profound physical and mental handicaps. The Boyds alleged that the defendant negligently failed to provide adequate medical care during labor and delivery. At trial, plaintiffs presented evidence that Dr. Bulala, then at his home several miles away, had ordered the delivery room nurses to call him to the hospital only after crowning, and that consequently, he was absent when the emergency began and for the actual delivery. As a result, plaintiffs alleged, Mrs. Boyd was attended during labor and delivery only by nurses who were untrained in emergency measures which would have prevented the injury. The case was tried before a seven-member jury, which returned six verdicts against the defendant and for the various plaintiffs totalling $8,300,000. The verdicts were as follows: (1) compensatory damages for Veronica Boyd—$1,850,000; (2) compensatory damages for Helen Boyd—$1,575,000; (3) compensatory damages for Roger Boyd— $1,175,000; (4) compensatory damages for Helen Boyd and Roger Boyd, jointly, for past and future medical costs until Veronica Boyd reaches 18 years of age—$1,700,-000; (5) punitive damages for Veronica Boyd—$1,000,000; and (6) punitive damages for Helen Boyd—$1,000,000. Defendants moved that the verdicts be set aside on several grounds and for judgment notwithstanding the verdicts, and also moved that the amount recovered be reduced to conform to Va.Code § 8.01–581.15. Plaintiffs, in turn, moved to amend the complaint to conform to evidence produced at trial.

Six weeks after the trial, before the court had ruled on any post-trial motions, Veronica Lynn Boyd died. Following the death of the infant plaintiff, the defendant moved to amend the action to an action for wrongful death under Va.Code §§ 8.01–50 and 8.01–56. The defendant also moved that the record be opened to present evidence of death and that the court set aside the two verdicts returned for Veronica and the verdict returned jointly for her parents to compensate them for her medical expenses. The case is now before the court upon both the original post-trial motions and the motions made following the death of Veronica Lynn Boyd.

### I. *Original Post-trial Motions*

Following the trial, the defendant moved the court to reduce the amount of the verdict to conform with the requirements of Va.Code § 8.01–581.15; to set aside the verdicts for Roger Boyd and Veronica Boyd and enter judgment notwithstanding the verdicts; and to set aside all of the

verdicts as excessive and because of alleged errors in the jury instructions concerning agency and damages and because of alleged prejudice resulting from the court's failure to inquire on *voir dire* whether any of the veniremen had a child who suffered birth-related injuries. The plaintiffs moved to amend the complaint to conform to the evidence at trial, specifically to increase the prayer for punitive damages in the *ad damnum* of the complaint from $800,000 to $2,000,000.

## A. *Constitutionality of Va.Code § 8.01–581.15*

Defendant moves this court to reduce the total amount recovered by the plaintiffs in accordance with Va.Code § 8.01–581.15, which at the time of trial provided as follows:

> In any verdict returned against a health care provider in an action for malpractice where the act or acts of malpractice occurred on or after April one, nineteen hundred and seventy-seven, which is tried by a jury or in any judgment entered against a health care provider in such an action which is tried without a jury, the total amount recoverable for any injury to, or death of, a patient shall not exceed $750,000 [1].

Plaintiffs challenge the constitutionality of this statutory limitation on recovery,

arguing that § 8.01–581.15 violates constitutional rights to due process of law, equal protection of the laws, and the right to a jury trial. Plaintiffs further argue that the statute violates the separation of powers clause and the prohibitions against special legislation in the Virginia Constitution.

A search of the statute and case law across the country dealing with the cap question reveals first, that the statutes vary considerably, and second, that the case law is split on the constitutionality of medical malpractice cap legislation.[2] On the equal protection question, some courts have exercised more stringent scrutiny than that normally accorded to economic regulation, basing this heightened scrutiny on independent state constitutional grounds, *see, e.g., Carson v. Maurer*, 424 A.2d 825, 831 (N.H.1980), or on the argument that the statutes failed to provide an adequate *quid pro quo* to the class of plaintiffs who are disadvantaged by the limitation on recovery. *See, e.g., Baptist Hospital of Southeast Texas, Inc. v. Baber*, 672 S.W.2d 296, 298 (Tex.Civ.App. 1984).

In the present case, however, the court finds no basis in the Virginia Constitution for a heightened standard of review. The Virginia Constitution contains no equal protection clause as such; equal protection

---

**1.** In 1983, the General Assembly amended the statute, increasing the amount recoverable to $1,000,000 for claims arising after October 1, 1983. 1983 Va. Acts c. 496.

**2.** The following cases have upheld medical malpractice damages limitations against constitutional challenges: *Fein v. Permanente Med. Group*, 38 Cal.3d 137, 695 P.2d 665, 211 Cal. Rptr. 368 (1985); *Florida Patient's Compensation Fund v. Von Stetina*, 474 So.2d 783 (Fla.1985); *Johnson v. Saint Vincent Hosp., Inc.*, 273 Ind. 374, 404 N.E.2d 585 (1980); *Prendergast v. Nelson*, 199 Neb. 97, 256 N.W.2d 657 (1977) (plurality opinion); *State ex rel. Strykowski v. Wilkie*, 81 Wis.2d 491, 261 N.W.2d 434 (1978).

Among the cases declaring limitations of recovery unconstitutional are: *Jones v. State Bd. of Medicine*, 97 Idaho 859, 555 P.2d 399 (1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977) (*on remand*, damages limit held unconstitutional), *Jones v. State Bd. of Medicine*, Nos. 55527 and 55586 (4th Dist. Idaho, Nov. 3, 1980); *Wright v. Central DuPage*

*Hosp.*, 63 Ill.2d 313, 347 N.E.2d 736 (1976); *White v. State*, 203 Mont. 363, 661 P.2d 1272 (1983); *Carson v. Maurer*, 120 N.H. 925, 424 A.2d 825 (1980); *Arneson v. Olson*, 270 N.W.2d 125 (N.D.1978); *Simon v. Saint Elizabeth Med. Ctr., Inc.*, 3 Ohio.Op.3d 164, 355 N.E.2d 903 (Ct.Com.Pl.1976); *Baptist Hospital of Southeast Texas, Inc. v. Baber*, 672 S.W.2d 296, 298 (Tex. Civ.App.1984), *writ of error revoked*, 714 S.W.2d 310 (Tex.1986). *See also, McGuire v. C & L Restaurant, Inc.*, 346 N.W.2d 605 (Minn.1984) ("damage cap" of $250,000 in Minnesota Dram Shop Act violates equal protection guarantees of Minnesota and United States constitutions). In Louisiana, the state supreme court upheld the statute, *Sibley v. Board of Supervisors of L.S.U.*, 462 So.2d 149 (La.1985), but on rehearing announced an independent state constitutional standard that may void the law. *Sibley v. Board of Supervisors of L.S.U.*, 477 So.2d 1094 (La. 1985).

rights are guaranteed by the antidiscrimination clause in article 1, section 11, and the prohibitions against special legislation in article 4, section 14. Neither clause provides stronger protection than the equal protection clause of the fourteenth amendment to the United States Constitution. The Virginia Supreme Court has specifically held that article 1, section 11, which is limited by its terms to classifications based on religion, race, color, sex, or national origin, is no broader than the equal protection clause. *Archer v. Mayes*, 213 Va. 633, 638, 194 S.E.2d 707, 711, (1973). Likewise, in interpreting article 4, section 14, the court has applied a reasonable basis standard which is equivalent to weak equal protection review. *E.g., Bray v. County Board of Arlington County*, 195 Va. 31, 37, 77 S.E.2d 479, 483 (1953).

■ Further, the lack of a *quid pro quo* provides no basis for stringent scrutiny of the statute. The United States Supreme Court has never clearly established the *quid pro quo* requirement as a constitutional doctrine and this court declines to do so. *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 88, 98 S.Ct. 2620, 2638, 57 L.Ed.2d 595 (1978).[3]

■ As the Supreme Court noted in *Duke Power*, 438 U.S. at 83, 98 S.Ct. at 2635, a statutory limitation on recovery is a classic economic regulation, and as such is entitled to judicial deference. Absent the use of a suspect classification or the infringement of a fundamental right, the statute must be upheld if it is reasonably related to a valid legislative purpose.

■ The Virginia medical malpractice cap legislation clearly does not create a suspect classification.[4] Certainly, the law treats victims of medical malpractice differently from the victims of other torts, and within the class of medical malpractice plaintiffs, the law further discriminates between those whose losses exceed the cap and those whose losses do not. Such classifications, while facially unfair, do not violate the equal protection clause according to current interpretation. In *Duke Power*, 438 U.S. at 93, 98 S.Ct. at 2640, the Supreme Court stated, "The general rationality of the Price-Anderson Act liability limitations—particularly with reference to the important Congressional purpose of encouraging private participation in the exploitation of nuclear energy—is ample justification for the difference of treatment between those injured in nuclear accidents and those whose injuries are derived from other causes." Likewise, the purpose of Va.Code § 8.01–581.15, to maintain an adequate level of health care services in the Commonwealth by ensuring that health care providers can obtain affordable insurance, 1976 Va. Acts c. 611, is sufficient justification under the Constitution for treating those injured through medical malpractice differently from those injured in other torts.

---

**3.** In *Duke Power*, the court did not resolve this question because it found that the statute provided a reasonably just substitute for the common law remedies it replaced. In the medical malpractice cap statutes, in contrast, no such *quid pro quo* can be found. Certainly, there is a benefit flowing to the defendant doctor from such a cap, but there is nothing in the way of a corresponding benefit flowing to the injured plaintiff. There is no certainty of recovery for the plaintiff, and should he be successful in the effort to recover, he then encounters the restriction of the cap, no matter how serious or debilitating his injuries may be. Likewise, the rationale which underlies the workers compensation laws is not apt when considering the medical malpractice cap statute. Workers compensation laws provide an appropriate *quid pro quo* flowing to the worker who might have been injured in employment, *i.e.,* the certainty of compensation without extensive litigation.

**4.** The Supreme Court has recognized race, *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), national origin, *Korematsu v. U.S.*, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944), and alienage, *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), as suspect classifications which trigger strict scrutiny on equal protection review. In cases involving gender and legitimacy classifications, the Court has applied a standard between strict scrutiny and the more lenient rationality review accorded to most economic regulations. *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982).

Further, the rationality of the statute justifies the distinction it draws between medical malpractice plaintiffs whose damages are less than the cap amount, who may be completely compensated for their injuries, and those whose damages exceed the cap, who will not be completely compensated. In *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the Supreme Court upheld the State of Maryland's administration of the Federal Aid to Families With Dependent Children program (AFDC), a need-based program under which Maryland limited the total amount a family could receive, thereby burdening larger families. The medical malpractice cap, which similarly burdens those whose losses are greatest, must certainly pass constitutional muster under the rule of *Dandridge*. As the Indiana Supreme Court noted in *Johnson v. Saint Vincent Hospital, Inc.*, 273 Ind. at 398, 404 N.E.2d at 600, "While the interest of the severely injured patient in full recovery rather than partial recovery ... is great for the purpose of selecting the appropriate equal protection test, it is not greater than that of the children needing but being denied subsistence level support in *Dandridge....*" Clearly, the classifications created by the statute do not violate the equal protection clause.

Even in the absence of a suspect classification, however, a statute is subject to strict scrutiny under both equal protection and due process analyses if it infringes upon a fundamental right. The Supreme Court has held that rights "explicitly or implicitly guaranteed by the Constitution" are fundamental. *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 33–34, 93 S.Ct. 1278, 1296–97, 36 L.Ed.2d 16 (1973). Among the rights which the court has held to be fundamental are: freedom of expression and association, *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); right to vote and participate in the electoral process, *Harper v. Virginia Board of Election*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); right to interstate travel, *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); right to fairness in the criminal process, e.g., *Mayer v. Chicago*, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); right to fairness in procedures concerning governmental deprivations of life, liberty or property, e.g., *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); right to marry, *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); and right to privacy, e.g., *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *cf.*, *Bowers v. Hardwick*, — U.S. —, 106 S.Ct. 2841, 92 L.Ed.2d 140 (U.S.1986), reversing 760 F.2d 1202 (11th Cir.1985).

Absent from the list above is the right to a full recovery in tort, which is not a right guaranteed by the federal Constitution. The right to recover in a personal injury action is a part of the common law, and the Supreme Court declared over a century ago, "A person has no property, no vested interest, in any rule of the common law." *Munn v. Illinois*, 94 U.S. 113, 134, 4 Otto 113, 134, 24 L.Ed. 77 (1877). Moreover, although the constitutions of certain states specifically prohibit limitations upon recovery in personal injury actions, *see*, e.g., Ariz. Const. art. 18 § 6, the Virginia Constitution contains no such provision. Thus, the right to a full recovery in tort is not a fundamental right under the Virginia Constitution.

Because § 8.01–581.15 neither creates a suspect classification nor infringes upon a fundamental right, it is subject to the liberal standard of review normally accorded economic regulations under equal protection and due process analyses. Since the medical malpractice cap is clearly a rational means to achieve the legislative goal of securing the provision of health care services by maintaining the availability of malpractice insurance at affordable rates, the statute meets the requirements

of the equal protection and due process clauses, and must be upheld on those grounds.

Plaintiff further argues that the medical malpractice cap infringes upon the constitutional right to trial by jury. The right to a jury in civil trials in federal courts is explicitly guaranteed by the seventh amendment to the United States Constitution, but this right does not apply to the states through the fourteenth amendment. *Walker v. Sauvinet,* 92 U.S. (2 Otto) 90, 23 L.Ed. 678 (1876); *Minneapolis & St. L. R.R. v. Bombolis,* 241 U.S. 211, 36 S.Ct. 595, 60 L.Ed. 961 (1916); *New York Central R.R. v. White,* 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667 (1917). In federal diversity cases, however, the Supreme Court has held that the federal right to a jury prevails:

> The federal system is an independent system for administering justice to litigants who properly invoke its jurisdiction. An essential characteristic of that system is the manner in which, in civil common-law actions, it distributes trial functions between judge and jury and, under the influence—if not the command—of the Seventh Amendment, assigns the decision of disputed questions of fact to the jury.

*Byrd v. Blue Ridge Rural Electric Coop., Inc.,* 356 U.S. 525, 537, 78 S.Ct. 893, 901, 2 L.Ed.2d 953 (1958) (footnote omitted). In reaching this decision, the court weighed the federal policy favoring jury decisions of disputed fact questions against the rule of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) that litigation should not come out one way in the federal court and another way in the state court. The court concluded, "We do not think the likelihood of a different result is so strong as to require the federal practice of jury determination of disputed factual issues to yield to the state rule in the interest of uniformity of outcome." 356 U.S. at 540, 78 S.Ct. at 902. In the present case, by contrast, the likelihood of a different result in certain cases would be quite strong if the federal guarantee to a civil jury differed from the state guarantee in its impact upon the statute. Accordingly, in determining the constitutionality of § 8.01–581.15, the court will consider both the federal and the state rights to a jury in civil trials.

The federal right to a civil jury trial is limited to those actions in which the right to jury trial existed at common law [5] and actions where Congress specifically provides for a jury by statute. *Ex parte Peterson,* 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1919). In such actions the seventh amendment prohibits interference with the ultimate determination of issues of fact by the jury. *Id.* at 310, 40 S.Ct. at 546. Specifically, the amendment provides the right to have a jury properly determine not only the question of liability but also the extent of the injury by an assessment of damages. *Dimick v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed.2d 603 (1935). In *Dimick,* the court stated, "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Id.* at 486, 55 S.Ct. at 301.

The wording of § 8.01–581.15 provides no guidance as to how the courts are to reach the results mandated by the statute. A court might seek to preclude a jury from returning a verdict exceeding the limitations by ordering a reduction of the *ad damnum* of the complaint and instructing the jury about the limitation. Alternatively, the court may simply refuse to enter judgment for the full amount of a verdict exceeding the cap. The first approach essentially prohibits the jury's consideration of damages above the cap amount, while the second approach invalidates any jury finding which exceeds the cap. Under either approach, section 8.01–581.15 infringes

---

**5.** Such actions include medical malpractice actions, *see Stetler, C. Joseph, 3d Medical Professional Liability Cases,* 366 (1957), "The History of Reported Medical Professional Liability Cases."

strongly on the fact-finding function of the jury in assessing appropriate damages. Since the assessment of damages is a fact issue committed to the jury for resolution, a limitation on the performance of that function is a limitation on the role of the jury. Since the right to a jury as the fact-finder is guaranteed under the seventh amendment, it therefore follows that such a limitation is unconstitutional under the provisions of that amendment.

■■■■ The right to a civil jury provided by article 1, section 11 of the Virginia Constitution is, the court finds, equivalent to the federal seventh amendment right. This right has been guaranteed by the Virginia Bill of Rights since 1776. A.E.D. Howard, 1 *Commentaries on the Constitution of Virginia* 244 (1974). In Virginia, it is the province of the jury to settle questions of fact, *Forbes & Co. v. So. Cotton Oil Co.*, 130 Va. 245, 260, 108 S.E. 15, 20 (1921), and this includes the question of damages. *Danville Community Hosp. v. Thompson*, 186 Va. 746, 43 S.E.2d 882 (1947); *E.I. duPont de Nemours & Co. v. Taylor*, 124 Va. 750, 98 S.E. 886 (1919). Again, section 8.01–581.15 invades the province of the jury and restricts the jury's ability to assess damages. The statute is therefore unconstitutional under article 1, section 11, of the Virginia Constitution. Because the result is the same under federal and state constitutional analyses, the court need not reconsider the rule of *Byrd v. Blue Ridge Rural Electric Coop., Inc.*, *supra*.

■■■ It is true, of course, that a federal court has the power to set aside a verdict and order a new trial, or order *remittitur*, or enter judgment notwithstanding the verdict, but these powers may be exercised only by applying the proper legal standard to the facts of a specific case and may be invoked only when there is a discrepancy between the evidence and the verdict. Likewise, the power of Virginia courts to set aside verdicts and enter judgments may be exercised only according to well established legal principles. A court may set aside a verdict only if it is plainly contrary to or unsupported by evidence. *Norfolk & W. Ry. v. T.W. Thayer Co.*, 137 Va. 294, 119 S.E. 107 (1923); *Stallard v. Atlantic Greyhound Lines*, 169 Va. 223, 192 S.E. 800 (1937); *Allessandrini v. Mullins*, 178 Va. 69, 16 S.E.2d 323 (1941).

■■ In contrast, section 8.01–581.15 would require the court to ignore a verdict in an amount above the cap which is supported by evidence and instead enter judgment for the cap amount. This extraordinary requirement bears no relation to the doctrines of *remittitur*, new trial, and judgment notwithstanding the verdict, and it cannot be founded upon the court's inherent power over verdicts and judgments. Indeed, there exists no permissible basis for entering a judgment predetermined by the legislature in place of a judgment on a verdict properly reached by a jury.

Unquestionably, the legislature may pass measures which affect the way a jury determines factual issues. The legislature may prescribe rules of procedure and evidence, create legal presumptions, allocate burdens of proof, and the like. Just as certainly, the legislature may abolish a common law right of action and, if it desires, replace it with a compensation scheme.[6] The legislature may even make rules concerning the type of damages recoverable and the way in which damages are paid.[7] But the legislature may not

---

6. Significantly, the cases upholding limitations on liability of recovery have not involved common law actions where the right to a jury trial is present. *See, e.g., Duke Power*, 438 U.S. 59 at 88, n. 32, 98 S.Ct. 2620, 2638, n. 32, 57 L.Ed.2d 595. The liability limitation that was actually at issue in *Duke Power* was part of a statutory scheme which replaced common law rights with a mechanism for compensating victims. *Id.* at 93. See also, *New York Central R. Co. v. White*, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667 (1916) (upholding workers compensation law). The court is aware of no other area in which caps have been applied to recovery in tort litigation between private parties.

7. Many states have enacted laws providing for periodic payment of damages, allowing defendants to cease payment when a plaintiff dies earlier than predicted. *Florida Patient's Compensation Fund v. Von Stetina*, 474 So.2d 783 (Fla.1985); *American Bank & Trust Co. v. Com-*

preempt a jury's findings on a factual issue which has properly been submitted to the jury. In particular, the legislature may not mandate the amount of judgment to be entered in a trial. Such a measure not only infringes upon the right to a jury where that right applies, but, when considered in the light of the proper functioning of the legislature and the judiciary under our system of separation of powers of the respective branches, it also impermissibly interferes with the function of the judicial branch, thereby violating the separation of powers. Viewed in this light, § 8.01–581.-15 is clearly unconstitutional.

Certainly, it is recognized that wide deference must be given to legislative enactments of the sort which are under consideration in this case. Section 8.01–581.15 may be said to represent the considered judgment of the General Assembly as to an appropriate means to achieve the goal which was sought, namely, to decrease the escalating liability insurance premiums for various health providers. That the statute has not been successful in doing so in no way denigrates the legislative purpose in enacting the statute.

Giving that due deference to the legislative action in this case, such action, taken to respond to the exigencies of the moment, cannot prevail over the constitutional right to a civil jury trial. The constitutional provision is not to be frittered away. *Forbes & Co. v. So. Cotton Oil Co.*, 130 Va. 245, 263, 108 S.E. 15, 21 (1921). Where a conflict exists, the constitutional provisions must prevail.

Accordingly, § 8.01–581.15 is declared void, and the court will enter judgment upon the verdict.[8]

---

*munity Hospital of Los-Gatos-Saratoga, Inc.*, 36 Cal.App.3d 359, 683 P.2d 670, 204 Cal.Rptr. 671 (1984); *State ex rel. Strykowski v. Wilkie*, 81 Wis.2d 491, 261 N.W.2d 434 (1978). Some statutes shift the burden for paying damages above a specified amount from the health care providers to a state run compensation fund. See *Florida Patient's Compensation Fund, supra* 474 So.2d at 788–89. Even without such a fund, of course, the effect of the cap is to shift the

### B. *Defendant's Motion to Set Aside the Verdict for Roger Boyd*

Defendant argues that the verdict in favor of Roger Boyd must be set aside because the evidence in the case did not establish the prerequisites for recovering damages for emotional distress. The court disagrees. In *Womack v. Eldridge*, 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974), the Virginia Supreme Court recognized a tort action for intentional infliction of emotional distress, stating:

> We adopt the view that a cause of action will lie for emotional distress, unaccompanied by physical injury, provided four elements are shown: One, the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result. Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality. This requirement is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved. Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe.

Defendant argues that the conduct in this case was not sufficiently outrageous to justify recovery. In *Womack*, the court stated:

> "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so.

---

medical expenses of the profoundly disabled victim to the state. Those expenses actually paid by the victim are also subsidized through tax deductions.

**8.** Because the court holds that the statute is unconstitutional, it need not consider the question of whether the cap would apply to each plaintiff individually or to the action as a whole.

Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability."

215 Va. at 342, 210 S.E.2d at 148, (quoting *Restatement (Second) of Torts*, § 46 at 77). In the present case, there was sufficient evidence to conclude that the conduct was so extreme and outrageous as to permit recovery. Plaintiffs' expert, Dr. Guy Harbert, called the defendant's instruction to the nursing staff to wait until crowning to call him for attendance "Russian roulette". Defendant's own expert agreed that defendant's conduct could be termed "egregious." The question was, therefore, properly submitted to the jury, which decided that the defendant's conduct was sufficiently extreme and outrageous to result in liability.

Defendant further argues that Roger Boyd cannot recover because the defendant's tortious actions were not directed toward him, but toward the mother and the infant. Defendant correctly notes that in *Womack*, the plaintiff was directly injured by defendant's outrageous conduct and that the restatement section relied on by the *Womack* court places additional conditions on recovery when the conduct is directed at a third person:

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

(b) to any person who is present at the time, if such distress results in bodily harm.

*Restatement (Second) of Torts*, § 46 at 71–72. Because Roger Boyd was not present in the delivery room, defendant argues that he fails to meet the requirements of 2(a) and therefore may not recover. A closer examination of the restatement and later case law undermines this argument, however.

The restatement passage quoted above is followed by this caveat:

The Institute expresses no opinion as to whether there may not be other circumstances under which the actor may be subject to liability for intentional or reckless infliction of emotional distress.

*Id.* at 72. The comment to this section further notes:

The law is still in a stage of development, and the ultimate limits of this tort are not yet determined. This Section states the extent of the liability thus far accepted generally by the courts. The Caveat is intended to leave fully open the possibility of further development of the law, and the recognition of other situations in which liability may be imposed.

*Id.* In particular, with regard to conduct directed at a third person, the comment notes that limiting coverage to plaintiffs who are present during the tortious act may be necessary for the practical reasons of guaranteeing the genuineness of the emotional distress claimed and limiting the number of potential plaintiffs, but concludes, "[T]he Caveat is intended, however, to leave open the possibility of situations in which presence at the time may not be required." *Id.* at 79.

The Virginia Supreme Court allowed recovery in just such a situation in *Naccash v. Burger*, 223 Va. 406, 290 S.E.2d 825 (1982), where the court recognized a cause of action for wrongful birth of a child. In *Naccash*, the delivery of an incorrect blood test to the parents caused them to proceed with a pregnancy which resulted in the birth of a baby afflicted with Tay-Sachs disease. In holding that the parents could recover, the court stated

We believe ... that the circumstances of this case justify another exception to the

general rule that damages for emotional distress are not allowable unless they result directly from tortiously caused physical injury. The restrictions upon recovery imposed by the provisos in *Hughes* [Hughes v. Moore, 214 Va. 27, 197 S.Ed.2d 214] and *Womack* were designed to discourage spurious claims asserted by chance witnesses to physical torts involving others. The considerations prompting imposition of the limitations do not exist here; no one suggests that the Burgers' emotional distress was feigned or that their claim was fraudulent. Indeed, to apply the restrictions here, or to refuse to recognize an exception to the general rule, "would constitute a perversion of fundamental principles of justice."

223 Va. at 416, 290 S.E.2d at 831, (quoting *Berman v. Allan*, 80 N.J. 421 at 433, 404 A.2d 8 at 15 (1979)).

 In the present case, it is likewise beyond question that the Boyds' claim was genuine and the distress they suffered real. Moreover, there is no concern that the tortious action could form the basis for actions by an unlimited number of plaintiffs. More importantly, to preclude recovery by a father for emotional distress simply because he does not bear the child and, therefore, cannot suffer direct physical injury, is manifestly unjust. Emotional distress suffered by a father, if it results directly from the tortious conduct, is, under *Naccash*, actionable. *See, Turner v. Laserna*, No. 3432 (Fredericksburg, Va. Cir.Ct. Aug. 26, 1986). Moreover, in a case such as this where there can be no doubt as to the genuineness of the claim, it would be absurd to withhold recovery simply because the plaintiff father was not present in the delivery room at the moment of birth. The evidence clearly showed that Roger Boyd was present at the hospital, that he was aware of difficulty with the delivery, that he knew. Dr. Bulala failed to attend the labor and delivery, that he witnessed efforts to resuscitate the infant and the infant's poor physical condition when she was taken from the delivery room, and that he witnessed the condition of his wife

upon her exit from the delivery room. As the court stated in *Naccash*,

[W]e believe it would be wholly unrealistic to say that the Burgers were mere witnesses to the consequences of the tortious conduct involved in this case. In our view, the parents' emotional distress was no less a direct result of wrongful conduct than the distress endured by the plaintiffs in *Hughes* and *Womack*....

223 Va. at 416, 290 S.E.2d at 831. As father of the infant, Roger Boyd suffered emotional distress as a direct result of the defendant's wrongful conduct.

Under the foregoing analysis, the jury was properly instructed as to the issue of Roger Boyd's damages, and the court will not disturb the verdict rendered by the jury in his behalf.

### C. Defendant's Motion to Set Aside the Verdict For Veronica Lynn Boyd

Defendant moves to set aside the verdict for compensatory damages for Veronica Lynn Boyd on two grounds. First, defendant argues that it was error to instruct the jury that it could consider loss of enjoyment of life as an element of damages. Second, defendant contends that there was insufficient foundation for the award of damages for future loss of income. For the following reasons, the court believes that the jury was properly instructed about these elements of damages.

 As a common law state, Virginia recognizes the right of an injured person to recover compensatory damages "as a recompense for a loss or injury actually received." *Giant of Virginia, Inc. v. Pigg*, 207 Va. 679, 685, 152 S.E.2d 271, 276 (1967). Under this definition, the negligently inflicted and permanent destruction of an individual's capacity to appreciate and enjoy life is a loss for which compensatory damages are appropriate. In the present case, the evidence indicated that Veronica suffered from severe and permanent physical and mental disabilities, including cerebral palsy, quadriplegia, blindness, and

mental retardation. This evidence certainly provided a sufficient foundation for the jury to conclude that Veronica's capacity to appreciate and enjoy life had been permanently destroyed or was, in other words, an "injury actually received".

Likewise, the testimony of plaintiffs' expert, Dr. William Cobb, provided an adequate basis for the jury to determine damages based on Veronica's loss of earning capacity. Because Dr. Cobb's testimony was based on stated economic assumptions, defendant argues that the evidence concerning Veronica Boyd's future wage loss was speculative and should not have been admitted. Applying general statistics to a specific case is necessarily speculative in the sense that absolute certainty cannot be achieved. This is the very nature of statistical evidence and is by no means a bar to its admissibility. The opposing party is always free to produce evidence showing that the particular case deviates from the statistical norm. In the present case, defendant was free to challenge the assumptions upon which Dr. Cobb based his testimony and to present counter-evidence concerning Veronica Boyd's probable earning capacity. The question was one for the jury, and plaintiffs' evidence was properly admitted.

Loss of earning capacity is a recognized element of damages in Virginia. *Exxon Corp. v. Fulgham*, 224 Va. 235, 284 S.E.2d 894 (1982). Although such damages cannot be ascertained with absolute accuracy, this does not render them speculative or uncertain. *Washington Golf & Country Club, Inc. v. Briggs & Brennan Developers, Inc.*, 198 Va. 586, 95 S.E.2d 233 (1956). A plaintiff need not prove damages with mathematical precision, but must simply furnish evidence of sufficient facts to permit the jury to make an intelligent and probable estimate of the damages. *Gwaltney v. Reed*, 196 Va. 505, 84 S.E.2d 501 (1954). Plaintiff met this burden; Dr. Cobb's testimony presented conservative, thorough projections of Veronica Boyd's prospective earnings. This evidence provided a sufficient basis for the jury's determination of damages, and the court will not alter the resulting verdict.

D. *Defendant's Motion to Set Aside the Verdict as Excessive*

The jury in this case returned six verdicts totalling $8.3 million, a large sum. Nevertheless, this court may set aside a verdict only if the verdict is

so excessive as to shock the conscience of the court and to create the impression that the jury has been influenced by passion, corruption or prejudice, or has misconceived or misunderstood the facts or the law, or if the award is so out of proportion to the injuries suffered to suggest that it is not the product of a fair and impartial decision....

*Rutherford v. Zearfoss*, 221 Va. 685, 689, 272 S.E.2d 225, 227–28 (1980) (quoting *Smithey v. Refining Co.*, 203 Va. 142, 146, 122 S.E.2d 872, 875–76 (1961)). Having heard the evidence of defendant's negligence in this case, the court cannot say that its conscience was shocked by the size of the verdict. The evidence clearly showed that the defendant knew that his procedure for nightime labor and delivery was below the appropriate standard of care, that he realized that his order to be called only after crowning posed a risk to his patient, and that as a result of this practice, he was absent throughout Mrs. Boyd's labor and delivery, including the period of fetal distress. The court does not believe that the award is out of proportion to the grievous physical injury suffered by the infant or the devastating emotional trauma and financial difficulty suffered by her parents. Moreover, the court has no reason to believe that the jury misconceived or misunderstood the facts or the law. Likewise, there is nothing to indicate passion, corruption, or prejudice on the part of the jury. The verdicts were supported by sufficient evidence and reached by a fair and impartial jury. Consequently, this court may not set aside the verdicts or put plaintiffs on terms to remit part of their recovery pursuant to provisions of § 8.01–383.1. To do so would be to usurp the function of the jury

as trier of fact. *Davenport v. Aldrich*, 207 Va. 271, 148 S.E.2d 768 (1966).

#### E. *Jury Instructions—Agency*·

 Defendant does not dispute that the instruction given to the jury on agency was a correct statement of the law, but argues that there was insufficient evidence to justify giving the instruction. An examination of the record refutes this contention. The evidence shows that at crucial points the nurses at the hospital followed Dr. Bulala's orders rather than obeying hospital policy. Nurse Brown testified that the nurses followed Dr. Bulala's standing order to call him at crowning even though the hospital policy required calling a doctor earlier. This testimony, coupled with Dr. Bulala's own testimony concerning his expectations of the nurses, certainly supports the inference that Dr. Bulala had the right to control the nurses. The right to control is the test for agency in Virginia. *Coker v. Gunter*, 191 Va. 747, 63 S.E.2d 15 (1951). Accordingly, this issue was properly submitted to the jury.

#### F. *Jury Instructions—Punitive Damages*

 Defendant argues that the court erred in instructing the jury on punitive damages by omitting the element of malice, which defendant contends is required by *Sit-Set v. Universal Jet Exchange, Inc.*, 747 F.2d 921, 928 (4th Cir. 1984). The rule of *Sit-Set*, however, is limited to tort actions having as essential elements "fraudulent," "false," or "malicious" states of mind. *Id.* In other tort actions, however, an award of punitive damages may be based on a finding that the defendant "acted under circumstances amounting to a willful and wanton disregard of the plaintiff's rights". *Wright v. Everett*, 197 Va. 608, 90 S.E.2d 855 (1956); *Virginia Model Jury Instruction* No. 9.080. The instruction given the jury was, therefore, proper.

 Defendant further argues that because punitive damages may not be awarded against a principal for the acts of an agent, *Hogg v. Plant*, 145 Va. 175, 133 S.E. 759 (1926), the court should have instructed the jury that punitive damages could be awarded only upon a specific finding that Dr. Bulala was independently liable for the plaintiff's injuries. Defendant is correct that punitive damages may not be awarded against a principal for acts done by his agents, but there is no authority for the requirement of a specific finding as to the defendant's independent liability. The instructions given the jury, which applied specifically to the defendant's own conduct, were sufficient in this regard.

#### G. *Plaintiffs' Motion to Amend the Complaint*

Because the court has found that the jury was properly instructed concerning punitive damages, and that the verdicts for punitive damages returned by the jury were the products of fair and impartial decisions and supported by sufficient evidence, the court will grant plaintiffs' motion to amend the complaint, increasing the prayer for punitive damages in the *ad damnum* of the complaint from $800,000 to $2,000,000.

#### H. *Voir Dire*

 On *voir dire*, the court refused to ask this question tendered by the defendant: "Does any member of the jury panel, or your immediate family have children who have suffered damages believed to the related to the birth of that child?" As the Fourth Circuit has noted, the court has wide discretion in determining what questions should be asked on *voir dire* examination of jurors. *Goosman v. A. Duie Pyle, Inc.*, 320 F.2d 45 at 49–50 (4th Cir.1963). In the present case, the court believes that the issue of bias was better and more fairly addressed by the following questions:

> Has any member of the venire or any member of your immediate family filed a complaint, registered a complaint, or filed a suit against any nurse, or physician, or hospital?

> If you were one of the parties in this action—and I have described the parties

to you—do you know of any reason why you would not be content to have the case tried by somebody in your frame of mind? In other words, can you look at this in your frame of mind and reach an impartial, fair decision on the evidence as it's introduced?

The substitution of these questions for the question tendered by the defendant was well within the discretion of this court and did not prejudice the defendant.

## II. *Motions Relating to the Death of Veronica Lynn Boyd*

After the death of the infant plaintiff, Veronica Lynn Boyd, the defendant moved the court to amend this action to an action for wrongful death under Va.Code § 8.01–50 and § 8.01–56; to open the record to allow defendant to present evidence of death; to set aside the verdicts in favor of Veronica Lynn Boyd and the verdict for her future medical expenses awarded to her parents, and grant the defendant judgment notwithstanding the verdicts as to those damages awarded by the jury which are not permitted in an action for death by wrongful act; to order *remittitur* as a result of the death; and to review each verdict in light of the death of Veronica Boyd "in order to prevent substantial injustice to the defendant."

### A. *Motion to Convert to Wrongful Death Action*

Defendant's motion to amend the action to convert it to an action for wrongful death requires an interpretation of Va.Code § 8.01–56, which reads in pertinent part as follows:

[W]hen a person who has brought an action for personal injury dies pending the action, such action may be revived in the name of his personal representative. If death resulted from the injury for which the action was originally brought, a motion for judgment and other pleadings shall be amended so as to conform to an action under § 8.01–50, and the case proceeded with as if the action had been brought under such section.

Likewise, the Virginia survival statute, Va. Code § 8.01–25, provides in part as follows:

Every cause of action ... shall survive ... the death of the person in whose favor the cause of action existed.... Provided ... that if the cause of action asserted by the decedent in his lifetime was for a personal injury and such decedent dies as a result of the injury complained of with a timely action for damages arising from such injury pending, the action shall be amended in accordance with the provisions of § 8.01–56.

Defendant argues that for the purposes of §§ 8.01–25 and 8.01–56, an action is still pending after the jury returns the verdict but before the court enters judgment. Such an interpretation would create a conflict between those sections and § 8.01–21, which provides as follows:

When a party dies, or becomes convicted of a felony or insane, or the powers of a party who is a personal representative or committee cease, if such fact occurs after verdict, judgment may be entered as if it had not occurred.

The clear purpose of § 8.01–21 is to eliminate the wastefulness of retrying an action which has been completely litigated. This court should not construe the wrongful death statutes as a partial repeal of § 8.01–21 where the legislature has evinced no intent to make such a repeal. *Albemarle County v. Marshall*, 215 Va. 756, 761, 214 S.E.2d 146, 150 (1975). Moreover, § 8.01–21 is a codification of a common law rule. *Jackson v. Wickham*, 112 Va. 128, 132, 70 S.E. 539, 540 (1911). In contrast, the wrongful death statutes created a right of action unknown at common law. *Lawrence v. Craven Tire Co.*, 210 Va. 138, 169 S.E.2d 440 (1969). As a statute in derogation of common law, the wrongful death act must be strictly construed.

Based on these principles of construction, the court finds that the requirements of the survival and wrongful death statutes, §§ 8.01–25, 8.01–50, and 8.01–56, apply when the death occurs before a final verdict, whereas § 8.01–21 applies where the death occurs after the ver-

dict. The court will, therefore, deny the defendant's motion to amend the present action to conform with the wrongful death statutes.

### B. *Motions Concerning the Record and the Verdicts*

 Defendant's other motions relating to the death of Veronica Boyd must be denied as procedurally improper. Defendant's motion to open the record to allow the presentation of new evidence and his motion to set aside certain verdicts were both proffered to the court under Rule 60(b), Fed.R.Civ.P. This rule authorizes the court to relieve a party from a final judgment under certain circumstances. Because it authorizes relief from a final judgment, and not the setting aside of a verdict, Rule 60(b) is not properly invoked until after the entry of a final judgment. Defendant's motions must, therefore, be denied.

 Defendant's request that the court order *remittitur* because of Veronica Boyd's death must likewise be denied. As noted earlier, *remittitur* is properly invoked only when, in light of all the evidence, a verdict is so excessive as to create an impression that the verdict has resulted from the misconduct of the jury, actuated by passion, corruption, or prejudice, or the verdict is so out of proportion to the injury suffered as to suggest it is not the product of a fair and impartial decision. *Davenport v. Aldrich,* 207 Va. 271, 148 S.E.2d 768 (1966); *Edmiston v. Kupsenel,* 205 Va. 198, 135 S.E.2d 777 (1964). A verdict which is supported by sufficient evidence and reached in a fair and impartial trial is not subject to *remittitur. Miller v. Vaughan Motor Co.,* 207 Va. 900, 904, 153 S.E.2d 266, 269 (1967); *Hardy v. Greene,* 207 Va. 81, 84, 147 S.E.2d 719, 722 (1966). In the present case, defendant asks the court to review the verdicts and order *remittitur* based on an event which occurred after the verdicts were returned. This is not the proper function of *remittitur,* and defendant's request must be denied.

For the foregoing reasons, the court will enter judgment on the verdicts. An appropriate Order shall this day issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day

### ADJUDGED AND ORDERED

as follows:

1. Defendant's motion to reduce the amount of judgment to conform with § 8.01–581.15 shall be, and it hereby is, denied.

2. Defendant's motions to set aside the verdict and order new trial shall be, and they hereby are, denied.

3. Defendant's motions for judgment notwithstanding the verdict shall be, and they hereby are, denied.

4. Defendant's motion to amend the action to an action for wrongful death shall be, and it hereby is, denied.

5. Defendant's motion to reopen the record shall be, and it hereby is, denied.

6. Defendant's motion under Rule 60(b), Federal Rules of Civil Procedure, for relief from the verdicts shall be, and it hereby is, denied.

7. Plaintiffs' motion to amend the complaint to conform with the evidence shall be, and it hereby is, granted.

8. Judgment in accordance with the verdicts shall be, and it hereby is, entered for the plaintiffs in the above-styled action.

9. The above-styled action shall be, and it hereby is, dismissed with prejudice and stricken from the docket of the court.