**Anna S. REUWER, Plaintiff,**

v.

**Richard G. HUNTER, M.D., Defendant.**

**Civ. A. No. 84–0034–C–H.**

United States District Court,
W.D. Virginia,
Harrisonburg Division.

May 18, 1988.

---

Julia H. Brasfield, Ashcraft & Gerel, Alexandria, Va., Richard E. Trodden, Robert B. Adams, for plaintiff.

Ronald D. Hodges, Roy W. Ferguson, Jr., Wharton, Aldhizer & Weaver, Harrisonburg, Va., for defendant.

Gregory E. Lucyk, Asst. Atty. Gen., Richmond, Va., for Com. of Va.

Harris D. Butler, III, Midkiff & Associates, P.C., Richmond, Va., for Continental Ins. Co.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This matter comes before the court upon defendant's post-trial motions and plaintiff's motion to vacate the court's earlier order allowing intervention by Continental Insurance Company. For the reasons set forth below, the court will deny defendant's post-trial motions and grant plaintiff's motion to vacate.

*Facts of the Case*

Following a trial which produced a hung jury, this medical malpractice action was retried before a jury on March 9–13, 1987. Plaintiff Anna Reuwer, suing on behalf of her adult son, Milton, charged defendant Hunter with negligence in connection with the administration of an epidural injection for Milton's back pain. The evidence showed that on January 11, 1982, Dr. Hunter injected Milton with 15 cc of .05% Marcaine, a local anesthetic. This procedure was performed in Dr. Hunter's office in

Waynesboro, Virginia. Immediately after the injection, Milton suffered a seizure, followed by cardiac arrest and then respiratory failure. Milton also vomited, making it more difficult to clear his airway. Dr. Hunter's efforts to resuscitate Milton failed. Milton suffered a second cardiac arrest and was rushed to a nearby hospital, where he was revived. Unfortunately, the oxygen deprivation Milton suffered during the interval caused permanent injury, leaving him mentally retarded and in need of supervision.

The jury heard extensive expert testimony concerning the procedure performed by Dr. Hunter, the adequacy of his preparations for an emergency, and his response to Milton's respiratory arrest. Plaintiff's experts testified concerning the properties of Marcaine and the risk that a misplaced injection would deliver the drug directly into the bloodstream, causing cardiac arrest. They testified that before beginning the procedure, an intravenous line should have been established so that intravenous fluids could be given to support the blood pressure and to serve as a vehicle for the quick delivery of emergency drugs. Dr. Hunter failed to take this precaution in Milton's case. Plaintiff's experts further testified concerning the emergency medications and equipment that should have been at hand. In addition, Dr. Cyrus Vesuna testified that he believed that the dosage and concentration of Marcaine used by Dr. Hunter was excessive. After deliberations, the jury returned a verdict for the plaintiff in the amount of $2,400,000.

*Defendant's Motion for JNOV or New Trial*

Defendant has moved the court to enter judgment notwithstanding the verdict (JNOV) or grant a new trial. As grounds for this motion, defendant first asserts that plaintiff failed to comply with the notice of claim requirements of § 8.01–581.2 of the Virginia Code. Defendant argues that plaintiff failed to allege specifically in the notice that Dr. Hunter was negligent in administering the volume and concentration of Marcaine he used. Dr. Vesuna, testifying for the plaintiff, offered an opinion on these matters at trial.

■ Section 8.01–581.2 requires that the notice of claim include the time and a "reasonable" description of the alleged acts of malpractice. A claimant is not required to list every item on which he expects to present evidence. In the present case, the plaintiff supplemented the specific allegations in her notice of claim with a general allegation, stating, "Dr. Hunter fell below the standard of care committing such other acts of negligence in failing to prevent and treat the complications of the local anesthesia as may be shown in discovery or at trial." [sic] Defendant did not object to the adequacy or reasonableness of the notice of claim. Accordingly, under Rule Two (b) of the Medical Malpractice Rules of Practice, he is barred from raising this objection now.[1] Moreover, the court notes that the defendant cannot reasonably claim that he was surprised by the testimony of Dr. Vesuna concerning the volume and concentration of the anesthetic, since the same testimony was elicited at Dr. Vesuna's deposition, nine months before trial. For these reasons, the court will deny defendant's motion as to this ground.

■ Dr. Hunter also claims that the court erred in submitting the question of corroboration to the jury under Va.Code § 8.01–397, the deadman's statute. Dr. Hunter testified at trial that he had instructed Milton to have nothing to eat or drink beginning at midnight the night before the procedure. He further testified that on the day of the procedure, he asked Milton if he had had anything to eat or drink since midnight and that Milton had replied no. Because Milton was incompetent to testify at trial, the corroboration requirement of § 8.01–397 came into play. The statute provides, "In an action by or against a person who, from any cause, is

---

**1.** Rule Two (b), Medical Malpractice Rules of Practice provides:

Any objection to the adequacy or reasonableness of the notice of claim must be stated in writing by the health care provider by notice in writing to the claimant within 30 days after receipt of the notice of claim. Otherwise, any such objection shall be deemed waived.

incapable of testifying, ... no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony...."

Dr. Hunter contends that his testimony concerning his conversations with Milton was corroborated as a matter of law. The court disagrees. Under Virginia law, the question of corroboration is usually a question for the jury. *Whitmer v. Marcum*, 214 Va. 64, 196 S.E.2d 907 (1973). In the present case, the question of corroboration was clearly an issue of fact for the jury to determine. Nurse Anderson's testimony, upon which Dr. Hunter principally relied for corroboration, was equivocal. She was evasive on crucial points. It was therefore up to the jury to determine not just her credibility, but also whether her testimony corroborated that of Dr. Hunter. Likewise, it was for the jury to decide whether Donna Reuwer's testimony, which barely touched upon the disputed matters, corroborated Dr. Hunter's testimony. These were questions of fact, properly submitted to the jury under the law of Virginia. Accordingly, the court will deny defendant's motion as to this ground.

Defendant's remaining grounds for his motion for judgment notwithstanding the verdict or new trial involve objections concerning jury instructions. Dr. Hunter contends that the court erred in instructing the jury that loss of enjoyment of life was an element of recoverable damages. In the absence of a clear ruling from the Virginia Supreme Court on this issue, this court has held that the loss of enjoyment of life is a proper element of damages. *Boyd v. Bulala*, 647 F.Supp. 781, 792 (W.D.Va.1986). The court therefore will deny defendant's motion as to this ground.[2]

Dr. Hunter also objects to the court's refusal to give various instructions proposed by his counsel. The court finds that the instruction on "alternative courses of action" was properly refused as duplicative. The court further finds that the proposed instructions on causation and "the responsibility of the patient" were properly refused because they were essentially instructions concerning contributory negligence, a defense which was not pled in this case. Accordingly, the court will deny defendant's motion as to these grounds.

### Defendant's Motion to Reduce the Verdict

■ Defendant has moved the court in the alternative to reduce the verdict to conform with Virginia Code § 8.01–581.15. In *Boyd v. Bulala*, 647 F.Supp. 781 (W.D. Va.1986), 672 F.Supp. 915 (W.D.Va.1987), this court held that § 8.01–581.15 violated the seventh amendment to the United States Constitution. Defendant, joined by the Commonwealth of Virginia, urges this court to reconsider its ruling in *Boyd*, and cites as authority the recent cases of *In re: Billy H. Harbour*, 840 F.2d 1165 (4th Cir. 1988) and *Tull v. U.S.*, ─── U.S. ───, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987).

In *Harbour*, the Court of Appeals for the Fourth Circuit held that the 1984 Bankruptcy Act, which expanded the summary jurisdiction of the bankruptcy courts, did not violate the seventh amendment. The appeals court stated that actions falling within the expanded jurisdiction, although previously regarded as actions at law, take on the equitable nature of bankruptcy proceedings when tried by the bankruptcy court. Slip op. at 28. The narrow ruling of *Harbour*, which is grounded on the history of bankruptcy law and the bankruptcy power granted to Congress in Art. I, § 8 of the Constitution, has no application in the present case, an action at law which sounds in tort. Without a clear historical foundation, which does not exist in this case, the legislature cannot redesignate a legal claim as an equitable one and thus circumvent the jury requirement of the seventh amendment.

In *Tull*, the Supreme Court held that the seventh amendment protects the most fundamental elements of a jury trial, but went

---

2. The court notes that the usual argument against such damages does not apply in this case. Typically, defendants argue that damages for loss of enjoyment of life are not truly compensatory, because the plaintiff is unaware of his loss. Here, however, the evidence showed that Milton Reuwer was aware that his life had changed. Witnesses testified that he often cried and became agitated when he saw people who had once been friends.

on to hold that the assessment of a civil penalty is not one of those fundamental elements. 107 S.Ct. at 1840. The present case concerns the determination of damages, not the assessment of a civil penalty. Nevertheless, the defendant urges the court to read *Tull* broadly to hold that the seventh amendment applies only to the determination of liability. Defendant relies heavily on footnote 9 of the *Tull* opinion where the Court suggests a distinction between liability and remedy "phases" of a civil trial. The note makes clear, however, that the Court had before it no historical evidence concerning the right to a jury in determining civil remedies.

This court carefully sifted the historical evidence concerning the right to a civil jury in *Boyd,* 672 F.Supp. at 920. Applying the historical test traditionally used by the Supreme Court in seventh amendment cases, this court examined pertinent treatises and cases and found that at the time the seventh amendment was adopted, the common law reserved the determination of damages for the jury. The court concluded that in terms of the jury's role, history justifies no distinction between the liability and remedy phases of a trial of a common-law action. *Id.*

Applying the historical test is not always simple. The merger of law and equity, the reform of civil procedure, and the development of new causes of action have complicated analysis under the seventh amendment, for as the Framers' era grows more distant, the search for eighteenth-century analogs for modern causes of action becomes laborious. Nevertheless, the historical test remains preferable to more abstract alternatives. Indeed, by relying on the historical division between law and equity, known to every lawyer, the Supreme Court has wisely declined the task of formulating a principle for determining which cases should be tried by a jury—a task which the Framers themselves believed impossible.[3]

In the present case, the historical test is easily applied. There can be no doubt that the determination of damages was the role of the jury at common law. This court will therefore adhere to its ruling in *Boyd v. Bulala* and deny defendant's motion to reduce the verdict.

*Plaintiff's Motions to Vacate and to Deny Intervention*

■ Plaintiff has moved the court to vacate its order allowing intervention by the Continental Insurance Company. Plaintiff argues that Continental's motion to intervene is untimely and prejudicial. Continental sought to intervene in this case as of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, which provides for intervention upon timely application. Continental sought to intervene in order to assert a lien under Virginia Code § 65.1–42, which provides:

In any such action by such employee, his personal representative or other person against any person other than the employer, the court shall, *on petition or motion of the employer at any time prior to verdict,* ascertain the amount of compensation paid and expenses for medical, surgical and hospital attention and supplies and funeral expenses, incurred by the employer under the provisions of this Act, and deduct therefrom a proportionate share of such amounts as are paid by the plaintiff for reasonable expenses and attorney's fees ...

(Emphasis added.)

The right of subrogation which Continental seeks to enforce is purely a creature of statute and does not arise unless the conditions set forth in the statute are met. The first trial of this action began on July 9, 1985. The insurance company filed a petition pursuant to § 65.1–42 on July 11, 1985, asking the court to ascertain the amount of the lien. The jury in that trial was unable to reach a verdict, however, and the company did not seek a hearing on its petition. The case was set for retrial beginning

3. *See* M. Farrand, 2 *Records of the Federal Convention* 587 (1966) (remarks of Nathaniel Gorham and George Mason); *Federalist No. 83. See also* James Wilson's speech to the citizens of Philadelphia in P. Ford, *Pamphlets on the Constitution* 157 (1968), quoted in Henderson, *The Background of the Seventh Amendment,* 80 Harv.L.Rev. 289, 296 (1966).

March 9, 1987. Continental did not file a petition before the verdict was returned in this trial; indeed, the company did not move to intervene until some six months after the trial. This motion did not satisfy the requirements of the statute and should have been denied.

Moreover, Continental's tardiness has resulted in some prejudice to the plaintiff, since some items for which Continental now seeks reimbursement could have been pled as special damages had Continental sought a determination of the lien in a timely fashion. Under these circumstances, the court believes that Continental's motion to intervene should be denied as untimely and prejudicial. *Holsey v. Armour & Co.*, 743 F.2d 199 (4th Cir.1984); *Atkins v. State Bd. of Educ. of North Carolina*, 418 F.2d 874 (4th Cir.1969). Accordingly, the court will grant plaintiff's motion to vacate the court's order of September 21, 1987, and will deny Continental's motion to intervene.

Having disposed of all post-trial motions, the court will order entry of judgment on the verdict.

An appropriate Order shall this day issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day

### ADJUDGED AND ORDERED

as follows:

1. Defendant's post-trial motion for judgment notwithstanding the verdict or new trial shall be, and it hereby is, denied.

2. Defendant's motion to reduce the verdict shall be, and it hereby is, denied.

3. Plaintiff's motion to vacate the order allowing intervention by Continental Insurance Company shall be, and it hereby is, granted.

4. Continental Insurance Company's motion to intervene shall be, and it hereby is, denied.

5. The clerk is hereby directed to enter judgment on the verdict of this case.

6. This case shall be, and it hereby is, dismissed and stricken from the docket of this court.