Barbara Lynn **FRANKLIN**

v.

**MAZDA MOTOR CORPORATION, et al.**

**Civ. No. PN–87–2203.**

United States District Court, D. Maryland.

Feb. 2, 1989.

Jerome J. Seidenman, Jerome J. Seidenman, P.A., Baltimore, Md., and Theodore Losin, Morstein & Losin, P.A., Baltimore, Md., for plaintiffs.

Edward S. Digges, Jr. and Michael T. Wharton, Digges, Wharton & Levin, Annapolis, Md., for defendant Mazda Motor Corp.

J. Joseph Curran, Jr., Atty. Gen. of Md., Judson P. Garrett, Jr., Deputy Atty. Gen. of Md., and Robert A. Zarnoch and Kathryn M. Rowe, Asst. Attys. Gen., of Md., Annapolis, Md., for defendant-intervenor State of Md.

## OPINION AND ORDER

NIEMEYER, District Judge.

In this case the Court is presented with the question whether the limitation of $350,000 that is imposed by Maryland on personal injury awards for noneconomic damage (such as for pain and suffering) violates the constitutions of the United States and Maryland.

On May 13, 1987, Barbara Lynn Franklin was driving to work on the Capital Beltway around Washington, D.C. (Interstate 495) in her 1982 Mazda automobile when she heard a hissing noise inside her car. As she began to pull her car over onto the highway shoulder, she suddenly felt an ex-

tremely hot spray of water and antifreeze liquid on her feet and lower extremities. She reacted by removing her foot from the brake, which caused her to strike another automobile in front of her. As the result of the incident she sustained personal injuries, including second and third degree burns to her feet and ankles which have required skin grafting. She filed this lawsuit against Mazda Motor Corporation ("Mazda") on the basis of strict liability, seeking $750,000 in damages for her medical costs, pain and suffering, permanent injuries, loss of income and loss of use of the car. All but approximately $20,000 are claimed by her as compensation for noneconomic damage such as pain and suffering.

Less than a year before Franklin's injury, Maryland adopted legislation that limited any award for noneconomic damages in a personal injury action to $350,000. Courts Art., § 11–108(b), Md.Code. Confronted with this limitation, she filed a motion for partial summary judgment challenging its constitutionality. At the time she filed her motion, the complaint consisted of one count in strict liability. After Mazda argued that a declaratory judgment claim would be the appropriate procedural vehicle by which to challenge the limitation, she filed a motion to amend her complaint to add a claim for declaratory judgment that the Maryland statute is unconstitutional. That motion to amend, which is unopposed, will be granted, and the motion for summary judgment will be treated as having been filed on that claim also.

Because the constitutionality of a Maryland statute has been raised, the Court granted the motion of the State of Maryland to intervene.

Plaintiff challenges the cap on noneconomic damages on a number of constitutional grounds. She argues that it violates the civil jury trial right guaranteed by the Seventh Amendment to the United States Constitution. She also argues that the cap violates several sections of the Declaration of Rights of the Maryland Constitution, including Article 23 (jury trial right), Article 20 (trial of facts where they arise), Article 8 (separation of powers), and Article 19 (access to courts). Mazda and the State of Maryland contend, on the other hand, that the adoption of the cap was a permissible legislative function, violating no constitutional provision, and should be applied to limit damages in this case.

The Court has received well written and thoroughly researched memoranda from the parties and heard oral argument on December 16, 1988. It has also studied the further submissions of the parties based on recent decisions reported since argument.

For the reasons that are given hereafter, the Court has concluded that the enactment by Maryland of the cap on noneconomic damages in personal injury actions was a lawful and constitutional exercise of legislative power, both under the U.S. Constitution and the Constitution of Maryland, and therefore it will deny plaintiff's motion for summary judgment.

## I.

### THE CAP STATUTE

Section 11–108(b) of the Courts Article, Md.Code, provides that "[i]n any action for damages for personal injury in which the cause of action arises on or after July 1, 1986, an award for noneconomic damages may not exceed $350,000." Noneconomic damages include pain, suffering, inconvenience, physical impairment, disfigurement, loss of consortium, or other non-pecuniary injury, but it does not include punitive damages. *Id.* § 11–108(a).

Section 11–108 was enacted by the Maryland legislature on the recommendations of two government task forces, the Governor's Task Force to Study Liability Insurance (issued Dec. 20, 1985) and the Joint Executive/Legislative Task Force on Medical Malpractice Insurance (issued Dec. 12, 1985). These groups were formed in response to what the Maryland Governor and legislature perceived to be a crisis in the availability of insurance in Maryland. After conducting hearings, meetings, and considerable research, both groups concluded that a cap on noneconomic damages should be enacted by the Maryland legislature.

The Governor's Task Force report concluded:

> The justification for limiting damages for noneconomic loss, also known as "pain and suffering", lies in the need to reduce this presently uncontrolled element of damages in order to introduce some stability in the civil [justice] system. It is *not* recommended that compensation for out-of-pocket losses, known as "special damages" be limited; however, the civil justice system can no longer afford unlimited awards for pain and suffering.

> The ceiling on noneconomic damages will help contain awards within realistic limits, reduce the exposure of defendants to unlimited damages for pain and suffering, lead to more settlements, and enable insurance carriers to set more accurate rates because of greater predictability of the size of judgments. The limitation is designed to lend greater stability to the insurance market and make it more attractive to underwriters.

> A substantial portion of the verdicts being returned in liability cases are for noneconomic losses. The translation of these losses into dollar amounts is an extremely subjective process as these claims are not easily amenable to accurate, or even approximate, monetary valuation. There is a common belief that these awards are the primary source of overly generous and arbitrary liability claim payments. They vary substantially from person to person, even when applied to similar cases or similar injuries, and can be fabricated with relative ease.

> A cap on allowable pain and suffering awards will help reduce the incidence of unrealistically high liability jury awards, yet at the same time protect the right of the injured party to recover the full amount of economic losses, including all lost wages and medical expenses.

The proposals were submitted to the legislature, and after numerous amendments by both houses, the statute in its final form was enacted, effective July 1, 1986, as part of Chapter 639, Laws of 1986.

## II.

### RIPENESS

Mazda and the State of Maryland contend, as a threshold matter, that the issue of the statute's constitutionality is not sufficiently ripe to present a case or controversy and that it will not become ripe until a jury returns a verdict for noneconomic damages greater than $350,000. Plaintiff responds that the question must be resolved now. Because the law, as it now stands, limits Franklin to a claim of $350,000 for noneconomic damages, her counsel's presentation to the jury might well be affected. She questions whether her counsel is entitled to ask a jury for more than the law allows. She also argues that the jury must be instructed in advance as to the cap limit. The Court agrees that the issue is ripe for decision now.

Courts typically rule prior to trial on questions of law that will govern trial. This is particularly true if the jury is to be instructed on the law. The language of the statute here supports the conclusion that the jury should be instructed not to return a verdict for noneconomic damages in excess of $350,000.

Section 11–108(b) states that "[i]n any action for damages for personal injury ... an *award* for noneconomic damages may not exceed $350,000." Courts Art., § 11–108(b), Md.Code (emphasis added). The use of the term "award" is artful and describes a verdict, in the case of a jury trial, and the findings of fact, in the case of a court trial. This becomes apparent by the use of the term "award" in subsection (b) to describe that which the *trier of fact* determines. That use of the term "award" is confirmed by Section 11–109(b) which requires that "[a]s part of the verdict in any action for damages for personal injury ... *the trier of fact shall itemize the award* to reflect the monetary amount intended for ... (5) noneconomic damages." *Id.* § 11–109(b) (emphasis added). Because the statute requires the jury, as trier of fact, to itemize an *award* that does not include noneconomic damages greater than $350,000, the jury cannot properly dis-

charge this function without being instructed in advance about the limitation.

Moreover, practical considerations support instructing the jury as to the limitation. Plaintiff's attorney should know in advance of trial what evidence of pain and suffering he can present and whether he can ask the jury to award noneconomic damages in excess of $350,000. As plaintiff has also suggested, there is the possibility that one or more of the jurors will have learned through the media about this much-publicized cap and thereby attempt to decide the case using their personal knowledge of the law. An instruction to the jury would eliminate the possibility of this type of jury confusion. There is no logical reason to keep the jury in ignorance of the cap.

The Court therefore concludes that it should ally itself with those courts that have exercised discretion to inform the jury of a cap. *See Peot v. Ferraro*, 83 Wis.2d 727, 266 N.W.2d 586, 595–96 (1978) (in wrongful death action trial court should instruct jury of statutory limitation on recovery in order to avoid misleading jury and to prevent jury from "loading" damages in the nonpecuniary category); *Shepard v. Harris*, 329 S.W.2d 1, 8–9 (Mo.1959) (en banc) (in wrongful death action court acted properly in instructing jury as to $25,000 maximum statutory recovery); *see generally* Annotation, *Instruction Mentioning or Suggesting Specific Sum as Damages in Action for Personal Injury or Death*, 2 A.L.R.2d 454 (1948).

In this case the issue of damages for pain and suffering is not hypothetical; plaintiff has been injured and contends that the damages sustained for pain and suffering exceed the cap amount. The Court and jury are presented with the real question whether the statute is applicable. Because this question is of the type ordinarily decided by courts in preparation for trial and will have to be resolved to instruct the jury, it is ripe in the legal sense for decision at this time. This conclusion is supported by a number of decisions of the United States Supreme Court. In *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), the Court considered a constitutional challenge to a cap that limited the liability of private nuclear reactor owners in the event of a nuclear accident. In the course of finding the challenge ripe for decision, the Court said:

> Although it is true that no nuclear accident has yet occurred and that such an occurrence would eliminate much of the existing scientific uncertainty surrounding this subject, it would not, in our view, significantly advance our ability to deal with the legal issues presented nor aid us in their resolution.... [D]elayed resolution would frustrate one of the key purposes of the Price–Anderson Act—the elimination of doubts concerning the scope of private liability in the event of major nuclear accident.

*Id.* at 81–82, 98 S.Ct. at 2635.

Similar language and reasoning is found in *Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Development Commission*, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). In that case the Court concluded that a preemption challenge to certain waste disposal regulations was ripe, in part because:

> To require the industry to proceed without knowing whether the moratorium is valid would impose a palpable and considerable hardship on the utilities, and may ultimately work harm on the citizens of California. Moreover, if petitioners are correct that § 25524.2 is void because it hinders the commercial development of atomic energy, "delayed resolution would frustrate one of the key purposes of the [Atomic Energy] Act."

*Id.* at 201–02, 103 S.Ct. at 1721 (quoting *Duke Power*, 438 U.S. at 82, 98 S.Ct. at 2635).

In the present case, no amount of fact-finding or delay would aid the Court in resolution of what essentially is a purely legal question. Moreover, postponing resolution of the cap issue would frustrate one of the key purposes of Section 11–108—i.e., of increasing certainty in predicting damages awards in Maryland and thereby stabilizing insurance rates and attracting

more underwriters to Maryland. Accordingly, a prompt resolution of the constitutional challenge at this time will further one of the primary purposes underlying the passage of this legislation.

While the *Duke* Court addressed the constitutional challenge to the liability cap at a time when no nuclear accident had yet occurred, the plaintiff in this case has suffered real injuries and has filed the pending claim based on those injuries. Plaintiff deserves to know the rules of law that will apply to her trial. Accordingly, the Court concludes that the issue whether the limitation will apply at trial is ripe for decision.

## III.

### JURY TRIAL ISSUE

■ Plaintiff's primary challenge to the Maryland cap on pain and suffering is grounded in the argument that any finding of damages for pain and suffering is a factual issue for juries to resolve and that the limitation by the legislature is an impingement on the right of jury trial secured by the Seventh Amendment and analogous provisions of the Maryland Constitution. Plaintiff's challenge relies heavily on a group of cases decided by Judge James H. Michael, Jr., in the Western District of Virginia: *Boyd v. Bulala,* 647 F.Supp. 781 (W.D.Va.1986) (hereinafter *"Boyd I"*), *reconsideration denied,* 672 F.Supp. 915 (W.D.Va.1987) (hereinafter *"Boyd II"*); and *Reuwer v. Hunter,* 684 F.Supp. 1340 (W.D. Va.1988) (refusing to reconsider *Boyd I & II*).

In *Boyd I,* the court considered post-verdict motions directed to the constitutionality of Virginia's damage cap statute. At the time of the challenge, Virginia's cap limited *total* damages recoverable in a malpractice action against a health care provider to $750,000 (later raised by the legislature to $1,000,000). 647 F.Supp. at 785 & n. 1.

In addressing plaintiff's argument that the cap violated the Seventh Amendment jury trial guarantee, the court noted that the right to a jury trial exists in federal diversity cases. *Id.* at 788 (citing *Byrd v.*

*Blue Ridge Rural Electric Coop., Inc.,* 356 U.S. 525, 537, 78 S.Ct. 893, 900, 2 L.Ed.2d 953 (1958)). The court then cited *Dimick v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935) to support the assertion that the Seventh Amendment provides the right to have a jury properly determine not only the question of liability but also the extent of an injury through an assessment of damages. 647 F.Supp. at 788. The court reasoned that because the assessment of damages is a fact issue committed to the jury for resolution, a legislative limitation on the performance of that function in the form of a damages cap is an unconstitutional limitation on the jury.

Finding that Virginia's right to a civil jury trial was equivalent to the federal right, the court concluded that the cap also violated the state constitution's jury trial right. *Id.* at 789. This portion of the *Boyd* opinion is now of doubtful validity, as the Supreme Court of Virginia recently concluded that the Virginia cap did *not* violate the Virginia jury trial guarantee. *Etheridge v. Medical Center Hospitals,* —— Va. ——, 376 S.E.2d 525 (1989).

After the court decided *Boyd I,* the Commonwealth of Virginia, as intervenor, and the United States, as an *amicus curiae,* urged reversal of the decision. One year later in *Boyd II* the court refused to change its earlier decision. 672 F.Supp. 915. In this second opinion the court reviewed the history of the Seventh Amendment and concluded that it was intended to serve as an important check on the legislature and the judiciary. It further concluded that at common law the assessment of damages clearly was a matter peculiarly within the province of the jury. *Id.* at 919–20.

Virginia had argued that the power of the legislature to alter or abolish common-law actions includes the power to enact a limitation on recovery, regardless of the effect of the statute on the role of the jury. The court rejected the argument, stating:

> It is true that the Virginia General Assembly may constitutionally abolish a cause of action, and the attaching right

to a jury trial. Nothing in the Virginia Constitution prohibits this, nor does the U.S. Constitution require the perpetuation of common-law actions. It does not follow, however, that the legislature may constrict the right to a jury trial in the common-law actions which are retained. To the contrary, the seventh amendment commands that the right to trial by jury "shall be preserved." The legislature cannot, in the guise of shaping and delineating the cause of action, diminish this right.

*Id.* at 921 (citation omitted).

The *Boyd* court also relied on a principle that the function of awarding damages is constitutionally conferred to juries alone. Although this Court cannot equate an across-the-board adoption of a damage limitation which is a legislative function with an award of damages in a private suit which is a fact finding function of a jury, it would appear that the *Boyd* court's reliance on *Dimick, supra,* to support the principle is questionable. *Dimick* held that a federal judge, finding a verdict inadequate, is without power to add to it by refusing to grant plaintiff a new trial if the defendant will accept an increase in the verdict which the court deems appropriate. 293 U.S. at 486–87, 55 S.Ct. at 301. The decision was directed at the power of judges, not of the legislature and, by virtue of the very context of the decision, related to modification of a jury verdict by a judge, not an enactment of a statute. Moreover, it might be noted that not only was the jury discussion in *Dimick* dictum, but this 5–4 opinion may be of questionable validity today in light of *Tull v. United States,* 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), discussed *infra.*

■ In this Court's judgment, a legislature adopting a prospective rule of law that limits all claims for pain and suffering in all cases is not acting as a fact finder in a legal controversy. It is acting permissibly within its legislative powers that entitle it to create and repeal causes of action. The right of jury trials in cases at law is not impacted. Juries always find facts on a matrix of laws given to them by the legisla-ture and by precedent, and it can hardly be argued that limitations imposed by law are a usurpation of the jury function. The Court respectfully disagrees with this conclusion of the *Boyd* decision.

There can be little doubt that were a legislative body to review a dispute between two parties and resolve the compensation to be awarded, the activity would be a judicial one reserved to courts and juries. On the other hand, when a legislative body, *without regard to facts of a particular case, dispute or incident,* but rather as a matter of policy and rule determines for all citizens in all incidents that may occur thereafter that recovery will be limited, the function is legislative, completely analogous to the adoption or repeal of causes of action and remedies therefor. Juries function as parts of the dispute resolution apparatus between parties; a legislature functions to make rules in advance of disputes to be applied to the disputes. The Court here can discern no blurring of the lines separating these functions in this case where Maryland adopted a prospective law limiting awards for pain and suffering.

■ The power of the legislature to define, augment, or even abolish complete causes of action must necessarily include the power to define by statute what damages may be recovered by a litigant with a particular cause of action. As the Supreme Court has noted:

Our cases have clearly established that "[a] person has no property, no vested interest, in any rule of the common law." The "Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object," despite the fact that "otherwise settled expectations" may be upset thereby. Indeed, statutes limiting liability are relatively commonplace and have consistently been enforced by the courts. See, *e.g., Silver v. Silver* [280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929) ], *supra,* (automobile guest statute); *Providence & New York S.S. Co. v. Hill Mfg. Co.,* 109 U.S. 578 [3 S.Ct. 679, 27 L.Ed. 1038] (1883) (limitation of vessel owner's liability); *In-*

*demnity Ins. Co. of North America v. Pan American Airways,* 58 F.Supp. 338 (SDNY 1944) (Warsaw Convention limitation on recovery for injuries suffered during international air travel). Cf. *Thomason v. Sanchez,* 539 F.2d 955 (CA3 1976) (Federal Driver's Act).

*Duke Power Co.,* 438 U.S. at 88 n. 32, 98 S.Ct. at 2638 n. 32 (citations omitted); *see also Tull v. United States,* 481 U.S. at 427, 107 S.Ct. at 1840 ("Congress could, I suppose, create a private cause of action by one individual against another for a fixed amount of damages....") (Scalia, J., with Stevens, J., concurring in part and dissenting in part).

Particularly in the area of damages for pain and suffering, the legislature acts within its power in creating reasonable limits on the causes of action and recoverable damages it chooses to allow in the courts of law. Justice Roger J. Traynor recognized the power of the legislature to limit unpredictable damages such as those for pain and suffering:

> There has been forceful criticism of the rationale for awarding damages for pain and suffering in negligence cases. Such damages originated under primitive law as a means of punishing wrongdoers and assuaging the feelings of those who had been wronged. They become increasingly anomalous as emphasis shifts in a mechanized society from ad hoc punishment to orderly distribution of losses through insurance and the price of goods or of transportation. Ultimately such losses are borne by a public free of fault as part of the price for the benefits of mechanization.
>
> Nonetheless, this state has long recognized pain and suffering as elements of damages in negligence cases; *any change in this regard must await reexamination of the problem by the Legislature.*

*Seffert v. Los Angeles Transit Lines,* 56 Cal.2d 498, 511, 364 P.2d 337, 345, 15 Cal. Rptr. 161, 169 (1961) (Traynor, J., with Schauer & McComb, JJ., dissenting) (citations omitted) (emphasis added).

Plaintiff argues, however, that the Maryland legislature in enacting the cap has replaced its own judgment for that of the jury and prejudged that no litigant's pain and suffering in Maryland is worth more than $350,000. While this argument questions a proper legislative function, as has already been noted, it is also flawed because it assumes that pain and suffering is capable of accurate measurement by anyone. Just as happiness and love are objects of life that cannot be purchased with inexhaustible sums of money, pain, anguish and suffering are states of being that likewise cannot be compensated. To say that extreme pain justifies compensation of some extreme amount of money is no more meaningful than to say that one's love for another can be purchased. The very nature of pain and suffering renders it incapable of measurement without speculation and guesswork. While one could argue that money might afford a party pleasure to make him or her feel better in exchange for the pain that has been suffered, that is no more a guarantee of relief than is money a guarantee of happiness.

Because of the speculative nature of these damages, juries have pulled enormous numbers from the air as reactions of emotion and awarded them as noneconomic damages. No one can say whether or not the amounts are correct, or whether they compensate. Rather, these damage awards for pain and suffering are an anomaly in a system that achieves to foster rationalism and predictability.

The cardinal principle underlying an award of damages is to compensate, no more and no less, and although proof of damage need not be precise, its calculation must not be subject to guesswork or speculation. Yet when damages for pain and suffering have been considered by juries, there has been no economic standard of measurement by which to award them. Every jury verdict that awards damages for pain and suffering therefore has been based on the very guesswork and speculation that is abhorrent to the law. Nevertheless, to permit a jury to award damages for pain and suffering has long been a part

of our jurisprudence, and only by legislative action ought it to be changed. *See* O'Connell & Carpenter, *Payment for Pain and Suffering Through History*, 1983 Ins. Counsel J. 411 (1983). Now that the legislature has addressed the issue by limiting damages for pain and suffering, no one can demonstrate that the amount selected is wrong.

The Maryland cap on noneconomic damages represents a policy judgment by the legislature that pain and suffering will be compensable in a range between zero and $350,000. This type of policy judgment is not foreign to the legislature. For example, the Maryland legislature has created a cause of action for wrongful death and has allowed for items of damages to be recovered in varying degrees. *See* Courts Art., § 3–904, Md.Code (1984). However, it has been only since 1969 that the legislature has allowed for the recovery of damages for pain and suffering resulting from the loss of a spouse or minor child. *See Todd v. Weikle*, 36 Md.App. 663, 680, 376 A.2d 104, 113 (1977) (discussing amendments to § 3–904).

Because it is "clearly established that 'a person has no property, no vested interest, in any rule of the common law ...'" *Duke Power* 438 U.S. at 88 n. 32, 98 S.Ct. at 2638 n. 32, the $350,000 cap on noneconomic damages is not violative of the Seventh Amendment any more than is a law passed by the Maryland legislature completely eliminating the right to recover for noneconomic damages in a wrongful death action. If the legislature can act within its proper sphere of authority and completely eliminate a cause of action for negligence or repeal whole categories of recoverable damages under recognized torts, then it must follow that the legislature has the power to define causes of action and limit categories of recoverable damages for reasonable policy considerations without offending the Seventh Amendment. *See Hines v. Elkhart General Hospital*, 465 F.Supp. 421, 429–30 (N.D.Ind.), *aff'd on other grounds*, 603 F.2d 646 (7th Cir.1979) (court not persuaded that either U.S. or Indiana Constitution protects or mandates right to have jury determine damages;

$500,000 total malpractice damages cap upheld); *Pierre v. Eastern Air Lines*, 152 F.Supp. 486, 488 (D.N.J.1957) (Warsaw Convention liability cap of $8,300 per passenger not violative of Seventh Amendment; measuring of damages by jury is matter of practice rather than of right).

This view of the role of the legislature is consistent with the decisions of the highest courts of several states. For example, in *Etheridge v. Medical Center Hospitals, supra,* the Virginia Supreme Court rejected numerous constitutional challenges to the $750,000 medical malpractice damages cap at issue in *Boyd,* including a challenge based on the Virginia jury trial guarantee. In finding the jury trial right not infringed by the cap, the court stated that "[the cap] does nothing more than establish the outer limits of a remedy provided by the General Assembly. A remedy is a matter of law, not a matter of fact." —— Va. at ——, 376 S.E.2d at 529.

To the same effect is *Johnson v. St. Vincent Hosp., Inc.,* 273 Ind. 374, 404 N.E. 2d 585 (1980). In this case the Supreme Court of Indiana concluded that a state law limiting recovery in malpractice cases to $500,000 against health care providers (that had elected to come under the act) did not violate the state constitution's right to a jury trial, stating:

> [T]here is no indication in the cases relied upon by appellants that the right to have a jury assess the damages in a case properly tried by jury constitutes a limitation upon the authority of the Legislature to set limits upon damages. The Legislature may terminate an entire valid and provable claim through a statute of limitation. It may validly cause the loss of the right to trial by jury through failure to comply with the requirement to assert the right by procedural rule. It is the policy of this Act that recoveries be limited to $500,000, and to this extent the right to have the jury assess the damages is available. No more is required by [the jury trial right] of the Indiana Constitution in this context.

404 N.E.2d at 602.

And in *Fein v. Permanente Medical Group,* 38 Cal.3d 137, 695 P.2d 665, 211

Cal.Rptr. 368, *appeal dism'd*, 474 U.S. 892, 106 S.Ct. 214, 88 L.Ed.2d 215 (1985), the Supreme Court of California considered the constitutionality of a $250,000 cap on non-economic damages in medical malpractice cases. The court noted, with language this Court finds persuasive:

> Thoughtful jurists and legal scholars have for some time raised serious questions as to the wisdom of awarding damages for pain and suffering in any negligence case, noting, inter alia, the inherent difficulties in placing a monetary value on such losses, the fact that money damages are at best only imperfect compensation for such intangible injuries and that such damages are generally passed on to, and borne by, innocent consumers. While the general propriety of such damages is, of course, firmly imbedded in our common law jurisprudence, no California case of which we are aware has ever suggested that the right to recover for such noneconomic injuries is constitutionally immune from legislative limitation or revision.

38 Cal.3d at 159–60, 695 P.2d at 680–81, 211 Cal.Rptr. at 383–84 (citations and footnote omitted). The court concluded that the cap violated no state constitutional provision, noting that "we know of no principle of California—or federal—constitutional law which prohibits the Legislature from limiting the recovery of damages in a particular setting in order to further a legitimate state interest." 38 Cal.3d at 161, 695 P.2d at 682, 211 Cal.Rptr. at 385.

That the legislature has the power to limit recoverable damages without offending the Seventh Amendment is also supported by the recent decision of the Supreme Court in *Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). The *Tull* Court held that the Seventh Amendment guaranteed a jury trial to determine liability in actions by the government seeking civil penalties and injunctive relief under the Clean Water Act, but that the right to a jury trial did not apply to the assessing of civil penalties under the Act. 481 U.S. at 425–27, 107 S.Ct. at 1839–40. In a footnote the Court stated:

> Nothing in the Amendment's language suggests that the right to a jury trial extends to the remedy phase of a civil trial. Instead, the language "defines the kind of cases for which jury trial is preserved, namely, 'suits at common law.'" Although "'[w]e have almost no direct evidence concerning the intention of the framers of the seventh amendment itself,' the historical setting in which the Seventh Amendment was adopted highlighted a controversy that was generated . . . by fear that the civil jury itself would be abolished." We have been presented with no evidence that the Framers meant to extend the right to a jury to the remedy phase of a civil trial.

481 U.S. at 426 n. 9, 107 S.Ct. at 1840 n. 9 (citations omitted).

Although the breadth of this footnote might raise an eyebrow, it is apparent that the scope of the Seventh Amendment right to jury trial in civil cases is still open for discussion. If, as *Tull* suggests, the right to a jury trial does not extend to the remedy phase of a civil trial, then the Maryland legislature clearly can set reasonable limits on damages recoverable under recognized causes of action. The Court need not go so far to uphold the cap, however, as it is satisfied that the power of the legislature to abolish common law causes of action includes the power to set reasonable limits on recoverable damages. Unless unconstitutionally asserted, the will of the legislature cannot be second-guessed by a court. Thus, the enactment of the limitation on noneconomic damages was a legislative function and will not be disturbed under the contention that it usurped a jury function.

■ By force of the same arguments that the cap violates the Seventh Amendment, plaintiff also argues that it violates the Maryland jury trial guarantee set forth in Article 23 of the Maryland Declaration of Rights, which states:

> The right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum

of five hundred dollars, shall be inviolably preserved.

Mazda asserts that there has been no occasion for a Maryland appellate court to consider specifically whether the state constitutional right to jury trial provides any greater guarantee than the federal right. However, a relatively recent Maryland case indicates in dictum that the state jury trial right may be identical in scope to the federal right.

In *Attorney General v. Johnson*, 282 Md. 274, 385 A.2d 57, *appeal dism'd*, 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978), the court noted:

> Maryland's Constitution, Article XV, section 6, [now Article 23] which provides that "[t]he right of trial by Jury of all issues of fact in civil proceedings ... shall be inviolably preserved," *like the Seventh Amendment to the Constitution of the United States*, requires that "enjoyment of the right ... be not obstructed, and that the ultimate determination of issues of fact by the jury be not interfered with."

282 Md. at 291, 385 A.2d at 67 (citations omitted) (emphasis added). The *Johnson* court also noted that

> "The common law, like our Acts of Assembly, [is] subject to the control and modification of the Legislature, and may be abrogated or changed as the General Assembly may think most conducive to the general welfare...."
>
> A person has no property, no vested interest, in any rule of the common law.... Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will, or even at the whim, of the legislature, unless prevented by constitutional limitations.

282 Md. at 282, 385 A.2d at 62 (citations omitted).

We are persuaded by this language that the Maryland Court of Appeals has interpreted the Maryland jury trial guarantee as providing no greater protection than is secured under the Seventh Amendment to the United States Constitution. For the same reasons discussed in connection with the Seventh Amendment argument the Court holds that the cap does not offend Article 23 of the Maryland Declaration of Rights.

## IV.

## VARIOUS MARYLAND CONSTITUTIONAL ISSUES

■ Plaintiff also argues that the cap violates Article 20 of the Maryland Declaration of Rights, which states:

> [T]he trial of facts, where they arise, is one of the greatest securities of the lives, liberties and estate of the People.

Mazda takes the position in response that this section is merely a venue provision, citing *Stewart v. State*, 21 Md.App. 346, 319 A.2d 621 (1974), *aff'd*, 275 Md. 258, 340 A.2d 290 (1975). *Stewart* confirms that the section is generally interpreted as a venue provision, with the emphasis of the right resting on the language "where they arise."

Although Article 20 is mainly a venue provision, it also is part of the Maryland due process guarantee and as such has been cited for the proposition that irrebuttable presumptions of fact are invalid. *Mahoney v. Byers*, 187 Md. 81, 48 A.2d 600 (1946). Plaintiff urges that the cap is invalid under Article 20 because it is an irrebuttable presumption of fact that no person's pain and suffering is worth more than $350,000. The State of Maryland contends, however, that the statutory limitation is *not* a presumption of fact, but rather a legislative limit placed on damages as a matter of public policy.

The Supreme Court of Indiana considered and rejected the exact argument advanced by plaintiff in *Johnson v. St. Vincent Hospital, Inc.*, 273 Ind. 374, 404 N.E.2d 585 (1980), stating:

> The Act before us does not create such an evidentiary presumption requiring the trier of fact to infer that the patient's damages are less than $500,000. It is not a presumption which prevents recovery of more than that amount, but the policy of the law in the statute. The

limitation is not a denial of due process on this basis.

404 N.E.2d at 600; *see also Etheridge v. Medical Center Hospitals, supra,* — Va. at ——, 376 S.E.2d at 531–32 (rejecting irrebuttable presumption challenge to Virginia cap). *St. Vincent* and *Etheridge* are persuasive, and based on their reasoning the Court concludes that the Maryland cap does not unconstitutionally create an irrebuttable presumption of fact and does not offend Article 20 of the Maryland Declaration of Rights.

■ Plaintiff also argues that the cap violates Article 8 of the Declaration of Rights, which states:

[T]he Legislative, Executive and Judicial Powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one said Departments shall assume or discharge the duties of any other.

While the purpose of the separation of powers provision is to parcel out and separate the powers of government and confine particular classes of powers to particular branches of the supreme authority, *Wright v. Wright's Lessee,* 2 Md. 429, 452 (1852), the doctrine can "encompass a sensible degree of elasticity and should not be applied with doctrinaire rigor." *Dept. of Natural Resources v. Linchester Sand & Gravel Corp.,* 274 Md. 211, 220, 334 A.2d 514, 521 (1975).

In *Attorney General v. Johnson, supra,* the court discussed the separation of powers doctrine in the course of upholding a statute requiring submission of malpractice claims to a panel before filing suit in court:

[I]t is undeniable that the mere performance by a non-judicial body of a function that would in another context be considered purely judicial—*e.g.,* the determination of facts and the application of legal principles to those facts—cannot alone suffice to support a conclusion that the separation of powers principle has been violated.

282 Md. at 284, 385 A.2d at 63.

Plaintiff has not directed the Court to any Maryland authority holding that the setting of limits on recoverable damages is an inherently judicial or jury function. On the contrary, as the Court concluded in part III, above, the function is legislative. The power of the legislature to abolish the common law necessarily includes the power to set reasonable limits on recoverable damages in causes of action the legislature chooses to recognize. The Court therefore agrees with Mazda that if the legislature can, without violating separation of powers principles, establish statutes of limitations, establish statutes of repose, create presumptions, create new causes of action and abolish old ones, then it also can limit noneconomic damages without violating the separations of powers doctrine. *See Etheridge, supra,* — Va. at ——, 376 S.E.2d at 532 (Virginia cap properly viewed either as modification of common law or as legislative definition of state court jurisdiction, and as such does not violate separation of powers); *Genco v. Connecticut Light and Power Co.,* 7 Conn.App. 164, 174, 508 A.2d 58, 63 (1986) ("[i]t is the province of the legislative department to define rights and prescribe remedies; of the judicial to construe legislative enactments, determine the rights secured thereby, and apply the remedies prescribed.") (citation omitted); *Fein v. Permanente Medical Group,* 38 Cal.3d 137, 159–60, 695 P.2d 665, 681, 211 Cal. Rptr. 368, 384 ("no California case of which we are aware has ever suggested that the right to recover for such noneconomic injuries is constitutionally immune from legislative limitation or revision."), *appeal dism'd,* 474 U.S. 892, 106 S.Ct. 214, 88 L.Ed.2d 215 (1985). For the foregoing reasons, the Court concludes that the cap does not violate Article 8 of the Maryland Declaration of Rights.

Plaintiff also asserts that the cap violates Article 19 of the Maryland Declaration of Rights, which provides:

[E]very man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and

right, freely without sale, fully without denial, and speedily without delay, according to the Law of the Land.

Plaintiff at times appears to make an argument based upon this provision that the limitation on noneconomic damages violates her right to a jury trial. To the extent that such an argument is made, the Court rejects it for the reasons set forth in part III, above.

■ The plaintiff also appears to make a due process argument based upon this section. The Court will also reject this argument. "The 'law of the land' in Article 19 is the same due process of law required by the Fourteenth Amendment ..." *Attorney General v. Johnson*, 282 Md. 274, 298, 385 A.2d 57, 71, *appeal dism'd*, 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978) (citation omitted). Furthermore, "the test for determining whether access to the courts had been denied in violation of Art. 19 look[s] to the reasonableness of the restriction." *Whiting–Turner Contracting Co. v. Coupard*, 304 Md. 340, 360, 499 A.2d 178, 189 (1985).

In *Johnson,* the court stated:

[W]e simply cannot conclude that the additional expense and delay mandated by this malpractice claims statute is so unreasonable in relation to its legitimate goal that it contravenes due process. When we recall that there is no vested interest in any rule of the common law so that the common law "may be abrogated or changed as the General Assembly may think most conducive to the general welfare," it becomes apparent that there is here no denial of the due process right of access to the courts by the addition of a mode of procedure which merely causes some delay and increases the expense for a litigant who takes his claim to court, since there is no deprivation of any vested property right.

274 Md. at 299, 385 A.2d at 71 (citations omitted). Thus, the question presented by plaintiff's challenge is whether the cap is so unreasonable in relation to its legislative goal that it contravenes due process.

This approach is consistent with the opinion of the Supreme Court in *Duke Power*

*Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1977). In *Duke,* the Court noted that a statutory limitation on recovery is a classic economic regulation and that it must be upheld if it is reasonably related to a valid legislative purpose. *Id.* at 83, 98 S.Ct. at 2635; *see also Fein v. Permanente Medical Group, supra,* 38 Cal.3d at 158, 695 P.2d at 680, 211 Cal. Rptr. at 383 ("the Legislature may expand or limit recoverable damages so long as its action is rationally related to a legitimate state interest"). Absent the infringement of a fundamental right, due process does not require heightened scrutiny of a statute. *See Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986). While some state constitutions treat full recovery in tort as a fundamental right (*see, e.g.,* Ariz. Const. art. 18, § 6; *Barrio v. San Manuel,* 143 Ariz. 101, 692 P.2d 280 (1984)), the court is aware of no such provision in the Maryland Constitution. In addition, the Court has already concluded in part III that the right to a jury trial is not infringed by the cap. Because no fundamental right is infringed, heightened scrutiny of the statute under a due process analysis is not necessary.

The cap certainly survives plaintiff's challenge under a reasonable basis analysis. Reducing uncertainty in damages awards and increasing the availability of insurance through reduced costs in Maryland surely are valid legislative goals. And the method chosen, that is by imposing an economic limitation on damages not otherwise measurable economically, is reasonably related to these goals.

Plaintiff cites other state cases that struck damage caps on due process grounds, but the State of Maryland points out quite correctly that these states found *more* protection in their state due process clauses than is provided by the due process clause of the Fourteenth Amendment and by Article 19 of the Maryland Declaration of Rights. For example, in *Kansas Malpractice Victims Coalition v. Bell,* 243 Kan. 333, 757 P.2d 251 (1988), the court struck a $250,000 cap on noneconomic damages and a $1,000,000 cap on total damages in malpractice cases after noting that due

process requires "that the legislative means selected have a real and substantial relation to the objective sought." 757 P.2d at 259. The scrutiny applied in that case was stricter than Maryland's "reasonable relation" test.

In *Smith v. Dept. of Insurance,* 507 So.2d 1080 (1987), the court struck a noneconomic damages cap of $450,000 as violative of the state constitution's right of access to courts. The court concluded that the cap infringed on the right to jury trial, and that such a legislative act would generally be constitutional only if the legislature either provided a *quid pro quo* in the form of an alternative remedy or showed an overpowering public necessity and no other alternative method for meeting the necessity. 507 So.2d at 1089. Because this Court concludes that the cap will not violate plaintiff's right to a jury trial, there is no need to apply a test as strict as the test applied in *Smith.*

While the Maryland cap limits only noneconomic damages to $350,000, the Virginia cap at issue in *Boyd* and *Etheridge* limited *all* damages in malpractice cases to $750,-000. Even though that cap arguably was more restrictive than the cap at issue here, both courts upheld the Virginia damages cap on due process grounds. The *Boyd* court reasoned that because the cap created neither a suspect classification nor infringed upon a fundamental right, it should be subjected to the liberal standard of review normally accorded economic regulations under both equal protection and due process analyses. 647 F.Supp. at 787. The court therefore held that "[s]ince the medical malpractice cap is clearly a rational means to achieve the legislative goal of securing the provision of health care services by maintaining the availability of malpractice insurance at affordable rates, the statute meets the requirements of the equal protection and due process clauses, and must be upheld on those grounds." *Id.; see also Etheridge, supra,* —— Va. at ——, 376 S.E.2d at 531–32 (upholding cap on due process grounds).

The Court agrees with both *Boyd* and *Etheridge*'s due process analysis and concludes that the Maryland cap is valid as reasonably related to a legitimate legislative goal. For the foregoing reasons, therefore, the cap does not violate Article 19 of the Maryland Declaration of Rights.

At the trial of this case, Franklin will be permitted to present proof of all economic damages caused by the alleged tortious conduct of Mazda. She will also be entitled to claim damages for pain and suffering in a range that is limited to $350,000. This cap was imposed for general application by the Maryland legislature as part of its policy to increase the predictability of awards and to lend greater stability to the insurance market. Before the limitation was enacted, juries were asked to measure the unmeasurable and guess where only emotion ruled. To correct the certain unpredictability of that task is, in the Court's judgment, just the type of function that is permissibly legislative.

Accordingly, for the reasons given, it is hereby ORDERED this 2nd day of February, 1989, by the United States District Court for the District of Maryland, that:

1. The motion of plaintiff to amend her complaint is granted, and the proposed amended complaint is treated as filed;

2. The motion of plaintiff for a partial summary judgment that § 11–108(b) of the Courts. Art., Md.Code, is unconstitutional and for summary judgment declaring it unconstitutional is denied.